**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:22-CV-23684-LENARD**

ADISLEN PAZ DEL SOL,

    Plaintiff,

v.

HOMESTEAD HOSPITAL, INC.; BAPTIST HEALTH SOUTH FLORIDA, INC.; PARAGON CONTRACTING SERVICES, LLC d/b/a TEAMHEALTH FLORIDA; HEALTHCARE REVENUE RECOVERY GROUP, LLC, d/b/a HRRG, ARS ACCOUNT RESOLUTION SERVICES,

    Defendants.
_____/

## MOTION TO DISMISS COMPLAINT

Defendants, Homestead Hospital, Inc. (the "Hospital") and Baptist Health South Florida, Inc. ("Baptist"), (Homestead and Baptist are collectively referred to as "Defendants"), pursuant to Article III of the United States Constitution, Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1 of the Southern District of Florida, move to dismiss the Complaint filed by Plaintiff, Adislen Paz del Sol ("Plaintiff"), for lack of Article III standing and failure to set forth facts sufficient to support a "plausible entitlement to relief." *See Bell Atlantic v. Twombly*, 550 U.S. 544, 559 (2007).

**I.      Pertinent Allegations of the Complaint.**

Plaintiff alleges that, on or about June 8, 2021, she sought emergency treatment at the Hospital after suffering an accident at work. (D.E. 1 at p. 5 ¶ 18). She alleges the Hospital provided "a portion of the medical services" relating to her work-related injuries. (*Id.* ¶ 19). Plaintiff alleges

she informed the Hospital that her injuries "stemmed from a work accident and subsequent injuries that occurred within the course and scope" of her employment. (*Id.* ¶ 20). Attached to Plaintiff's Complaint are 2 redacted pages, out of 82 pages total of her medical records, concerning the June 8, 2021, event which state she was treated for "feeling anxious status post held at gun point 1 week ago at work." (D.E. 1-1 at p. 3). The records identify "W/C Worker Comp" as her insurer. (*Id.* at p. 2). Plaintiff alleges that on or about June 20, July 4 and July 23, 2021, Defendants sent her collection letters "in attempts to collect a consumer debt." (D.E. 1 p. 5 ¶ 21). The letters indicate Plaintiff owes $2,915.00 for the emergency medical care she received at the Hospital. (*Id.*).

Plaintiff sets forth two causes of action against Defendants. First, for violation of the Florida Consumer Collection Practices Act ("FCCPA"), § 559.72, Fla. Stat., based on the "foregoing acts and omissions" (Count 5). (D.E. 1 at p. 12 ¶¶ 50-52). Second, for violation of § 559.72(9), Fla. Stat., based on the allegation that Defendants "knew that the consumer debt resulted from a work accident" and "knew it [sic] could not collect or receive payment from an injured employee within the State of Florida except as explicitly permitted by Florida Statute" (Count 6). (*Id.* at p. 13 ¶¶ 50-63, at ¶ 60).[1]

## II.   Plaintiff Fails to Allege Any Concrete Injury in Fact and, Therefore, Lacks Article III Standing.

Plaintiff fails to allege any concrete injury in fact and, thus, cannot meet the standing requirements of Article III of the United States Constitution. In fact, Plaintiff does not allege a single injury in her Complaint. Instead, the closest she comes to alleging an injury is her claim that Defendants "jointly sent collection letters to Plaintiff . . . in attempts to collect a consumer debt. Said letters indicated that the amount owed by Plaintiff for treatment at the Emergency Department of [the Hospital] was $2,915.00." (D.E. 1 p. 5 ¶ 21). This is simply not enough.

---

[1]   Counts 1-4 and 7 of the Complaint are not asserted against Defendants.

"Whether a plaintiff has standing presents a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *Am. Fed'n of Gov't Employees Local 501 v. Biden*, 576 F. Supp. 3d 1155, 1164 (S.D. Fla. 2021) (Lenard, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). Article III standing has three requirements: "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Biden*, 576 F. Supp. 3d at 1164 (citations omitted). To satisfy the injury in fact requirement, a plaintiff must have "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Biden*, at 1164. (citations omitted).

In the context of an alleged statutory violation, Article III standing requires a concrete injury and a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). As such, a bare statutory violation is not sufficient to confer Article III standing:

> [A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact.'

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). *See also Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F. 4th 1236, 1248 (11th Cir. 2022) ("Because Hunstein has alleged only a legal infraction—a 'bare procedural violation'—and not a concrete harm, we lack jurisdiction to consider his claim.").

In *TransUnion*, the United States Supreme Court explained the Article III concrete harm principle as that which causes the plaintiff "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." 141 S.Ct. at 2206 (an uninjured plaintiff who has not suffered "any physical, monetary, or cognizable intangible harm . . . is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages") and "[t]hose are not grounds for Article III standing."). *See also Key W. Gold Club Homeowners Ass'n, Inc. v. Singh Co.*, No. 1:19-cv-23685, 2020 WL 6900118, at *3 (S.D. Fla. Nov. 24, 2020) ("While Congress may establish a cause of action by way of statute, a party must still have suffered a concrete injury-in-fact to have standing to sue in federal court. . . . a party alleging a bare procedural violation of a statute does not present a 'case or controversy' within the confines of Article III.") (Citations omitted).

Here, Plaintiff does not automatically have standing simply because Congress authorizes a plaintiff to sue for violation of the FCCPA. To have standing, a plaintiff must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized, or that the procedural violations caused an independent concrete injury. Plaintiff has alleged neither. "[T]he FDCPA is a shield to protect debtors from unethical and illegal debt collectors; it is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered." *Hill v. Resurgent Cap. Servs., L.P.*, No. 20-20563-CIV, 2020 WL 4429254, at *4 (S.D. Fla. July 31, 2020) (citing *Daniels v. Aldridge Pite Haan, LLP*, No. 5:20-cv-00089-TES, 2020 WL 3866649, at *4 (M.D. Ga. July 8, 2020).[2]

---

[2] "In applying and construing [the FCCPA] due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5); *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-Civ-MARTINEZ/TORRES, 2020 WL 2299937, at *4 (S.D. Fla. March 31, 2020).

As has been demonstrated, "the Eleventh Circuit does not recognize an 'anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury'" *Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *6 (S.D. Fla. May 25, 2021) (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F. 3d 990, 999, n.2 (11th Cir. 2020)). *See, e.g., Klein v. Receivable Mgmt. Grp., Inc.*, --- F. Supp. 3d --- 2022 WL 998366 (M.D. Fla. March 30, 2022) (remanding for lack of Article III standing in federal court because the plaintiff failed to allege a concrete harm in her claim for violation of the FDCPA); *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 954-55 (11th Cir. 2020) (finding plaintiff did not "allege that she suffered any harm beyond the alleged [FDCPA] violations"); *Walters v. Fast AC, LLC*, 540 F. Supp. 3d 1112, 1125 (M.D. Fla. 2021) (dismissing TILA claim for lack of standing); *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1362 (S.D. Fla. 2017) (dismissing claims that "assert only a 'bare procedural violation' of the FCRA"); *Louis v. Bluegreen Vacations Unlimited, Inc.*, No. 21-CV-61938-RAR, 2022 WL 1793058, at *2 (S.D. Fla June 1, 2022) (dismissing plaintiff's allegation of a bare procedural violation of the Military Lending Act, divorced from any concrete harm, as insufficient to confer standing).

Here, like the plaintiffs in the cases cited above, Plaintiff alleges only a bare procedural violation divorced from any concrete harm. She does not allege that she made any payments in response to the requests for payment (D.E. 1-2 pgs. 2-5) or that she suffered any other *concrete* injury. She does not claim a material loss such as a late fee, penalty or any quantifiable monetary damage. She does not allege any detrimental change in her position. As such, Plaintiff lacks individual standing under Article III of the United States Constitution. Plaintiff's attempt to bring claims for technical violations of the FCCPA fails and the Complaint is due to be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Region 8 Forest Serv. Timber*

*Purchasers Council v. Alcock*, 993 F. 2d 800, 807 n.8, 811 (11th Cir. 1993) (affirming dismissal because of plaintiffs' "fail[ure] to establish an injury to themselves sufficient to confer standing" which left the court without subject matter jurisdiction and required dismissal under Rule 12(b)(1)).

### III.     Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

The "FCCPA appl[ies] 'only to payment obligations of a (1) consumer arising out of a (2) transaction in which the money . . . or services at issue are (3) primarily for personal, family, or household purposes.'" *Agrelo v. Affinity Mgmt. Services, LLC*, 841 F. 3d 944, 950–52 (11th Cir. 2016) (citing *Oppenheim v. I.C. Sys., Inc.,* 627 F. 3d 833, 837 (11th Cir. 2010)). Here, the Complaint fails to state a claim for which relief can be granted for three reasons: (a) the FCCPA is inapplicable because the alleged debt is not a "consumer debt" since the medical services were primarily for employment purposes and not "primarily for personal, family, or household purposes"; (b) the FCCPA is inapplicable because the obligation arose by operation of law and, thus, does not constitute a "transaction"; and (c) the alleged debt is legitimate as a matter of law.

#### A.     The alleged debt is not a "consumer debt."

Plaintiff admits she sought emergency medical treatment for injuries resulting from a work accident. (D.E. 1 ¶¶ 18-20). She alleges she informed the Hospital that her injuries "stemmed from a work accident" (*id.* ¶ 20) and her medical records identify her insurer as "W/C Worker Comp." (D.E. 1-1 p. 2). Thus, while the medical services may have had a personal element, they were not "primarily for personal, family, or household purposes" because, as Plaintiff alleges, they arose within an employee-employer relationship and were alleged to have been undertaken pursuant to Florida Workers' Compensation Law for the sole purpose of employment. (*See* D.E. 1 ¶¶ 18-20). Plaintiff's allegations that the services she received were for employment purposes under Florida

6

Workers' Compensation Law properly must be accepted as true at this stage of the case. (*See* D.E. 1 ¶¶ 18-20, 58, 60).

The FCCPA only applies to a "'debt' or 'consumer debt'" which is statutorily defined as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." § 559.55(6), Fla. Stat. (2022). Thus, to recover under the FCCPA, "a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Agrelo*, 841 F. 3d at 950. To determine whether a transaction is a debt that is primarily for personal, family or household purposes, "a court should examine the purpose or intent behind entering into the transaction." *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1305 (S.D. Fla. 2016). This analysis necessarily is "fact-specific," and "courts should examine 'the transaction as a whole' to determine if it was primarily consumer or commercial in nature." *Martin*, 192 F. Supp. at 1305-06.

Because Plaintiff alleges that the medical services provided to her were employment-related, the obligation cannot be one that was *primarily* for other purposes. Thus, it is not a debt under the purview of the FCCPA as a matter of law. *See Derbin v. Keith M. Nathanson, PLLC*, No. 2:12-CV-670-FTM-29, 2013 WL 5490176, at *3 (M.D. Fla. Sept. 30, 2013). In *Derbin*, an employee sued his employer and the court referred the dispute to arbitration and ordered each party to pay half of the cost of the arbitration. *Id.* at *1. The arbitration did not take place, but the arbitrator pursued collection of a fee from the employee. *Id.* In pursuit of his fee, the arbitrator sent letters to the employee and the employee filed suit claiming the letters violated the Fair Debt

7

Collection Practices Act ("FDCPA").[3] *Id.* at *2. The *Derbin* court granted summary judgment to the arbitrator because it found that the debt at issue was employment related and not "primarily for personal, family or household purposes." *Id.* at *3. Just like the debt of the employee in *Derbin*, the alleged debt of Plaintiff here arises out of an employer-employee relationship.

*Derbin* is one of many cases to find that an obligation that is not primarily for personal, family or household purposes is not a "debt." *See, e.g., Berman v. GC Servs. Ltd. P'ship*, 146 F. 3d 482, 487 (7th Cir. 1998) ("unemployment insurance contributions do not qualify as 'debts' under the FDCPA because they do not satisfy the statutory requirement that 'the money, property, insurance, or services' underlying the transaction be 'primarily for personal, family, or household purposes.'"); *Orenbuch v. Leopold, Gross & Sommers, P.C.*, 586 F. Supp. 2d 105, 107–08 (E.D.N.Y. 2008) (alleged obligation to repay employer for over-paid salary not a debt under the FDCPA); *Saylor v. Pinnacle Credit Services, LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va. 2015), *aff'd*, 667 Fed. Appx. 829 (4th Cir. 2016) (obligation related to purchases for carpentry business not a "debt" under the FDCPA). Accordingly, the FCCPA is inapplicable to the "debt" the Plaintiff complains about because it is not a consumer debt as a matter of law.

Moreover, the plain language of the FCCPA further confirms that a medical debt arising from a Workers' Compensation claim cannot be considered a "consumer debt" within the meaning of the FCCPA. In this regard, one of the practices prohibited by the FCCPA with respect to a "consumer debt" is communicating or threatening to communicate with the debtor's employer:

> In collecting consumer debts, no person shall:
> . . .
> (4) Communicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless

---

[3] The FDCPA, like the FCCPA, defines a debt as "any obligation . . . of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes." 15 U.S.C. 1692a(5).

> the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection. However, this does not prohibit a person from telling the debtor that her or his employer will be contacted if a final judgment is obtained.

Fla. Stat. § 559.72 (2022). As such, under the FCCPA, if a medical debt underlying a Workers' Compensation claim can be considered "debt" or "consumer debt," then no one is ever permitted to communicate with an employer concerning the debt underlying the claim.

Florida's Workers' Compensation Law, however, clearly makes employers liable for such debts. For example, the statute entitled "Liability for compensation" provides that "[e]very employer coming within the provisions of this chapter shall be liable for, and shall secure, the payment to his or her employees, or any physician, surgeon, or pharmacist providing services under the provisions of s. 440.13, of the compensation payable under ss. 440.13, 440.15, and 440.16." Fla. Stat. § 440.10(1)(a) (2022). Thus, an employer is statutorily required to secure the payment of a medical debt underlying a Workers' Compensation claim.

Moreover, the Florida Legislature expressly declared the Workers' Compensation system to be "an efficient and self-executing system . . . which is not an economic or administrative burden." Fla. Stat. § 440.015 (2022). *See also Denny's Rest. v. Bell*, 659 So. 2d 1374, 1375 (Fla. 1st DCA 1995) ("the Workers' Compensation Law is intended to be a self-executing employer/carrier monitored system"); *Gonzalez v. Quinco Elec., Inc.*, 171 So. 3d 153, 155 (Fla. 1st DCA 2015) ("the workers' compensation system must 'ensure the prompt delivery of benefits to the injured worker' and must be 'an efficient and self-executing system which is not an economic or administrative burden.'"). Under this self-executing system "the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require." Fla. Stat. §

440.13(2)(a) (2022). Clearly, to do so, the employer must - - and is expected - - to communicate with health care providers as to their bills: "In our view, the statute obviously contemplates the receipt of medical information from the physician or other medical care provider." *Holiday Inn v. Re*, 643 So. 2d 13, 15 (Fla. 1st DCA 1994). In fact, among other rights, "[t]he employer has the initial right to select the treating physician." *St. Augustine Marine Canvas & Upholstery, Inc. v. Lunsford*, 917 So. 2d 280, 283 (Fla. 1st DCA 2005). Thus, under the Florida Workers' Compensation Law, and Florida courts interpreting same, consistent and regular communications between employers and medical care providers is not only anticipated but required.

Plaintiff's claim - - that a medical debt arising under Florida's Workers' Compensation Law can be considered a "consumer debt" under the FCCPA where a medical provider is prohibited from communicating with an employer concerning a medical debt even though the employer is required to provide and pay for the medical services that created the medical debt in the first place - - makes no logical sense. Neither statute can be read in isolation; rather, all parts of each statute must be read together to achieve a consistent whole. The Florida Supreme Court has consistently explained this basic rule of statutory interpretation:

> Statutory interpretation is a holistic endeavor, and when engaged in the task of discerning the meaning of a statute, we will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . Adverting to our catalogue of rules of statutory construction, [w]e are required to give effect to every word, phrase, sentence, and part of the statute, if possible, and words in a statute should not be construed as mere surplusage. Moreover, a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless. [R]elated statutory provisions must be read together to achieve a consistent whole, and . . . [w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.

*State v. Knighton*, 235 So. 3d 312, 316 (Fla. 2018) (internal quotations and citations omitted). The position advanced by Plaintiff forces the FCCPA and the Workers' Compensation statutes into irreconcilable conflict. Accordingly, Plaintiff's claim should be rejected in favor of respecting the harmonic balance between claims that are within the ambit of the FCCPA and claims that are within the ambit of the Florida Workers' Compensation Law. The present case is the latter and the FCCPA claims properly should be dismissed because the debt at issue is not a "consumer debt" within the meaning of the FCCPA.

  **B. The alleged debt did not arise out of a "transaction."**

For a debt to be subject to the FCCPA, the obligation must arise "out of a transaction." *See* Fla. Stat. § 559.55(6) (2022). The law that has developed on this issue recognizes that there must be a voluntary exchange to create a "transaction" within the meaning of the FCCPA and that obligations created by operation of law lack the necessary consensual element. *See Agrelo*, at 950–52 ("we have held that where the obligation to pay arises solely by operation of law, the obligation is not a debt under the FDCPA"); *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) ("The debt in this case does not result from a transaction, that is, a business dealing or some other consensual obligation, but from tortious conduct and so does not constitute a consumer transaction"); *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002) ("[a] 'transaction' must involve, at a minimum, some kind of business dealing or other consensual obligation."); *Parham v. Seattle Serv. Bureau, Inc.*, 656 F. App'x 474, 477–78 (11th Cir. 2016) (affirming dismissal of FCCPA claim that did not arise "from a consensual, contractual, or consumer transaction").

Here, Exhibit "B" to Plaintiff's Complaint identifies the medical services at issue as having been provided by the Hospital's "Emergency Department." (D.E. 1-2).[4] Under Florida law, the Hospital was required to provide emergency medical services to Plaintiff and Plaintiff was obligated to agree to pay for same. In this regard, § 440.13, Fla. Stat., specifically requires the Hospital to provide emergency care to injured workers "[p]ursuant to chapter 395." Section 395.1041(3)(h), Fla. Stat, in turn, provides that a patient "shall execute an agreement to pay for emergency services or care or otherwise supply insurance or credit information promptly after the services and care are rendered" The emergency medical treatment Plaintiff received was required by law to be provided to her and she was required by law to agree to pay the Hospital for the emergency services.

"Through Florida's workers' compensation law, an employer is 'legally responsible for paying medical bills, while the employee is insulated from liability'—an obligation created through operation of law." *Valenzuela v. Medicredit, Inc.*, No. 6:20-cv-124-Orl-37GJK, 2020 WL 13104699, at *2, 3 (M.D. Fla. Dec. 15, 2020) ("[a] transaction involves 'some kind of business dealing or other consensual obligation' . . . 'By contrast, an obligation to pay that arises solely by operation of law is not a debt covered by the FDCPA' or FCCPA") (citations omitted); *Jimenez v. Acct. Services*, 233 F. Supp. 3d 1359, 1364 (S.D. Fla. 2017) (citing *Oppenheim*, 627 F. 3d at 837) (the FCCPA "makes clear that the mere obligation to pay does not constitute a 'debt' under the

---

[4] "In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference. . . . The Civil Rules [of Procedure] provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F. 4th 1295, 1303 (11th Cir. 2022) (internal quotations and citations omitted).

FCCPA."). Accordingly, the alleged "debt" does not arise from a voluntary transaction but instead was incurred by operation of law and is not within the ambit of FCCPA.

### C. The alleged debt is legitimate as a matter of law.

"To establish a violation under Section 559.72(9) of the FCCPA, 'it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist.'" *Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016) (citing *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372–73 (S.D. Fla. 2011) (in turn quoting *Pollock v. Bay Area Credit Serv., LLC*, Case No. 08–61101–CIV, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009)). The alleged conduct in this case does not violate § 559.72(9), Fla. Stat., because the debt is legitimate as a matter of law.

While it may be true that the Hospital cannot collect the medical debt from Plaintiff under Florida's Workers' Compensation Law if her claim is a compensable industrial injury, it is equally true that the Hospital can collect the medical bill from Plaintiff if her claim is not a compensable industrial injury. Florida Workers' Compensation Law only provides benefits for compensable injuries. Compensable means "a determination by a carrier or judge of compensation claims that a condition suffered by an employee results from an injury arising out of and in the course of employment." Fla. Stat. § 440.13(1)(d) (2022). *See also Locke v. SunTrust* Bank, 484 F. 3d 1343, 1347 (11th Cir. 2007) ("[T]o be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances.") (citing *Strother v. Morrison Cafeteria*, 383 So. 2d 623, 628 (Fla. 1980)).

In her Complaint, however, Plaintiff not only fails to allege whether the carrier accepted the claim as compensable, and if it was, Plaintiff also fails to state when the claim was accepted as compensable, how this determination by the carrier was conveyed to the Hospital, if at all, and

when the Hospital was paid by the carrier, if at all. These are critical allegations because until the Hospital is actually paid, the debt is completely legitimate as a matter of law.[5]

As set forth above, the law required Plaintiff to execute an agreement to pay for the emergency medical services provided to her. Even if Plaintiff refused to execute such an agreement, she still would be liable as a matter of law. *See Variety Children's Hosp., Inc. v. Vigliotti*, 385 So. 2d 1052 (Fla. 3d DCA 1980). In *Variety Children's Hosp.*, the court held that a mother who had not signed any agreement to pay for medical care provided to her child (under circumstances where the child's father had signed such an agreement) was nevertheless liable for the medical expenses under a contract implied by law:

> Quasi-contracts are obligations imposed by law on grounds of justice and equity. They are imposed for the purpose of preventing unjust enrichment. Unlike express contracts or contracts implied in fact, quasi-contracts do not rest upon the assent of the contracting parties. Quasi-contracts are based primarily upon a benefit flowing to the person sought to be charged. The person unjustly enriched is required to compensate the person furnishing the benefit.

385 So. 2d at 1053. Thus, it is indisputable that (absent payment through Workers' Compensation) Plaintiff was and is liable for the medical bills at issue by operation of law. Yet, Plaintiff brings this action claiming that the debt is somehow not legitimate.

---

[5] It should be noted that, under Florida law, until a carrier accepts a claim as compensable and pays it, an injured worker ultimately must proceed to incur medical debt personally and seek redress through the civil courts. *See Elliott v. Dugger*, 542 So. 2d 392, 393–94 (Fla. 1st DCA 1989) ("plaintiff injuriously changed his position in reliance upon the defendants' statement that they had no workmen's compensation insurance; that, as a direct result of the plaintiff's reliance upon the defendants' actions and statements, he made no claim and received no compensation benefits to aid in the support of himself . . . ; ***that during this period the plaintiff became personally obligated for the payment of [medical bills]***") (ellipsis in original; emphasis supplied); *Byerley v. Citrus Pub., Inc.*, 725 So. 2d 1230, 1232–33 (Fla. 5th DCA 1999) ("In this case, [the injured worker] accepted and relied on the denial, ***bore her medical expenses***, then sued the employer in tort as permitted by the statute") (emphasis supplied).

Plaintiff does not allege that, at the time Defendants sent her the statements, the Hospital already had received payment. *See, e.g., Marchisio v. Carrington Mortg. Services, LLC*, 919 F. 3d 1288, 1312–13 (11th Cir. 2019) ("Defendant indisputably knew at the time its alleged agent, Southwest, sent the insurance letters that Plaintiffs no longer owned the property and had no outstanding debt."); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (finding a debt not to be legitimate only after it was discharged in bankruptcy). Without such an allegation, Plaintiff fails to allege a claim because the obligation at issue is completely legitimate as a matter of law.

WHEREFORE, Defendants, Homestead Hospital, Inc. and Baptist Health South Florida, Inc., respectfully request that Counts 5 and 6 of the Complaint filed by Plaintiff, Adislen Paz del Sol, be dismissed and that Defendants be awarded their costs and attorneys' fees pursuant to Section 559.77, Florida Statutes, along with all other and such further relief as is appropriate under the circumstances.

Respectfully submitted,

ISICOFF RAGATZ
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Matthew L. Lines
Eric D. Isicoff
Fla. Bar No. 372201
Isicoff@irlaw.com
Matthew L. Lines
Florida Bar No. 0243980
Lines@irlaw.com
Catherine A. Mancing
Florida Bar No. 23765
Mancing@irlaw.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF this 5th day of December, 2022, upon the following:

Amor Law Firm, P.A.
Monica Amor, Esq.
3625 NW 82nd Avenue, Suite 203
Doral, FL 33166
mamor@amorlaw.com
*Counsel for Plaintiff, Adislen Paz del Sol*

By: /s/ *Matthew L. Lines*
Matthew L. Lines