UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23684-CIV-LENARD/LOUIS

**ADISLEN PAZ DEL SOL,**

    Plaintiff,

**v.**

**HOMESTEAD HOSPITAL, INC.,
BAPTIST HEALTH SOUTH
FLORIDA, INC., HEALTHCARE
REVENUE RECOVERY GROUP,
INC.,** doing business as HRRG, ARS
Account Resolution Services, and
**PARAGON CONTRACTING SERVICES,**
LLC, doing business as TeamHealth Florida,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS COMPLAINT (D.E. 8)

**THIS CAUSE** is before the Court on Defendants Homestead Hospital, Inc. ("Homestead Hospital") and Baptist Health South Florida, Inc.'s ("Baptist Health") Motion to Dismiss Complaint, ("Motion," D.E. 8), filed December 5, 2022. Plaintiff Adislen Paz del Sol filed a Response on December 18, 2022, ("Response," D.E. 18), to which Homestead Hospital and Baptist Health filed a Reply on December 23, 2022, ("Reply," D.E. 21). Upon review of the Motion, Response, Reply, and the record, the Court finds a follows.

**I.      Background**

On or about June 8, 2021, Plaintiff received emergency medical services from Defendant Homestead Hospital for injuries suffered in the course and scope of her employment. (Compl. (D.E. 1) ¶¶ 18-19.) Plaintiff informed Homestead Hospital that her injuries stemmed from a work-related accident. (Id. ¶ 20.)

On or about June 20, 2021, July 4, 2021, and July 23, 2021, Homestead Hospital and Baptist Health ("Defendants") jointly sent collection letters to Plaintiff, attempting to collect a consumer debt in the amount of $2,915.00 for treatment received at Homestead Hospital's Emergency Department on June 8, 2021. (Id. ¶ 21.)

On November 9, 2022, Plaintiff filed the instant Complaint asserting seven claims, (D.E. 1); only Counts 5 and 6 remain.[1] Count 5 alleges that Defendants violated the Florida Consumer Collection Practices Act ("FCCPA"), "including Florida Statute § 559.72." (Id. ¶¶ 50-52.) Count 6 alleges that Defendants violated the FCCPA, Fla. Stat. § 559.72(9), by attempting to collect a debt from Plaintiff with knowledge that they had no right or authority to collect the debt from Plaintiff under Florida's Workers' Compensation law. (Id. ¶¶ 53-63.)

On December 5, 2022, Defendants filed the instant Motion to Dismiss arguing that (1) Plaintiff lacks Article III standing to assert Counts 5 and 6, and (2) in any event, Counts

---

[1] Counts 1, 2, 3, 4, and 7 were asserted against Defendants Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("ARS") and Paragon Contracting Services, LLC, d/b/a Teamhealth Florida ("Teamhealth"). On February 2, 2023, the Court entered an Order dismissing this case as to ARS and Teamhealth, following a Joint Notice of Settlement as to those Defendants. (D.E. 37, 38.)

5 and 6 fail to state claims upon which relief can be granted.  (D.E. 8.)  Plaintiff filed a Response, (D.E. 18), to which Defendants filed a Reply, (D.E. 21).

Because the Court finds that Counts 5 and 6 must be dismissed for lack of standing, the Court will confine its analysis to that issue.

## II.     Legal Standard

"Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over 'Cases' and 'Controversies.'"  L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla., 879 F.3d 1274, 1281 (11th Cir. 2018) (quoting U.S. Const. art. III, § 2, and citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992)). "Accordingly, subject matter jurisdiction requires a justiciable case or controversy within the meaning of Article III."  Id. (citing Allen v. Wright, 468 U.S. 737, 750-51) (1984)). "Standing constitutes one component of justiciability."  Id. (citing Lujan, 504 U.S. at 560-61).  "Whether a plaintiff has standing presents a 'threshold question in every federal case, determining the power of the court to entertain the suit.'"  Id. at 1280-81 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  "'Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).'"  Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P 12(h)(3); see also Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) ("[A] district court or appellate court may dismiss a case at any time for lack of subject

matter jurisdiction[.]") (citing Ins. Corp. v. Compagnie des Bauxites, 456 U.S. 694, 704 (1982)).

At the motion to dismiss stage, "a plaintiff must allege facts that, taken as true, 'plausibly' state that the elements of standing are met." Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 48 F.4th 1236, 1241 (11th Cir. 2022) (citing Thole v. U.S. Bank N.A., __ U.S. __, 140 S. Ct. 1615, 1621 (2020); Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 924 (11th Cir. 2020)). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Muransky, 979 F.3d at 924 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

**III.   Discussion**

Defendants argue that Plaintiff lacks standing because she has failed to allege that she suffered a concrete injury in fact. (Id. at 2-6.) They argue that the Complaint alleges only that Defendants sent Plaintiff collection letters in violation of the FCCPA, (id. at 2), and a bare statutory violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III, (id. at 3 (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016); TransUnion LLC v. Ramirez, __ U.S. __, 141 S. Ct. 2190, 2205 (2021); Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 48 F.4th 1236, 1248 (11th Cir. 2022))). They argue that the Complaint does not allege that Plaintiff made any payments in response to the Collection Letters or suffered any other concrete injury. (Id. at 5.) As such, they argue that the Complaint should be dismissed for lack of subject matter jurisdiction. (Id. at 5-6.)

4

In her Response, Plaintiff argues that the Supreme Court in Spokeo "recognized that 'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' and that 'a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.'"  (D.E. 18 at 4-5 (quoting Spokeo, 578 U.S. at 342); see also id. at 5 (quoting Perry v. Cable News Network, Inc., 8 F.3d 1336, 1339-40 (11th Cir. 2017) (quoting Spokeo, 578 U.S. at 342)).)  She argues that "post-Spokeo decisions trend in favor of finding concrete injury under FDCPA where the amount of the validity of the debt is misstated."  (Id. at 5 (citing Church v. Accretive Health, Inc., 654 F. App'x 990, 994-95 (11th Cir. 2016)).)  She argues that violations of the FDCPA based on untruthful representations of the character and amount of debt, and unfair or unconscionable means to collect or attempt to collect a debt, should be sufficient to confer standing without the need to show additional harm.  (Id. at 5-6.)  She further argues that the FCCPA "allows statutory damages, and as such, a plaintiff 'is not required to prove actual damages, but only a violation of one of the prohibited practices in the FCCPA.'"  (Id. (quoting Laughlin v. Household Bank, Ltd., 969 So. 2d 509, 513 (Fla. Dist. Ct. App. 2007), and citing Harris v. Beneficial Fin. Co. of Jacksonville, 338 So. 2d 196, 200 (Fla. 1976)).)  She argues that her "allegation that she was deprived of her statutory right to receive correct information regarding the legitimacy of the debt as a result of Defendants' unlawful actions is sufficient to demonstrate a concrete injury under FCCPA, thereby establishing FCCPA standing."  (Id. (discussing Bacardi v. Select Portfolio Servicing, Inc., Civil Action No. 16-23381-Civ-Scola, 2017 U.S. Dist. LEXIS 160951, at *11-12 (S.D. Fla.

Apr. 4, 2017), and citing Belcher v. Ocwen Loan Servicing, LLC, Case No: 8:16–cv–690–T–23AEP, 2018 WL 1701963, at *4 (M.D. Fla. Mar. 9, 2018)).)

In their Reply, Defendants argue: "Perhaps before Spokeo and its progeny there was an argument that Plaintiff's claim could have survived as pleaded, but her allegation now - - consisting of nothing more than a 'bare procedural violation, divorced from any concrete harm' - - is too attenuated to survive." (D.E. 21 at 1.) They argue that all of the federal court cases Plaintiff relies on directly conflict with subsequent decisions of the Eleventh Circuit and the Supreme Court. (Id. (citing Hunstein, 48 F.4th at 1248; Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 936 (11th Cir. 2020); TransUnion, 141 S. Ct. at 2214; Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 1004 (11th Cir. 2020)); see also id. at 2-3 (citing Hunstein, 48 F.4th at 1248; Muransky, 979 F.3d at 936; TransUnion, 141 S. Ct. at 2214; Trichell, 964 F.3d at 1004).) They further argue that Laughlin and Harris "are state court decisions and cannot govern standing in this Court. Even if they could, they directly conflict with the controlling decisions in Transunion, Hunstein, Muransky and Trichell." (Id. at 2.) They further argue that to the extent Count 6 is predicated upon Florida's Workers' Compensation law—which provides, in relevant part, that "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter[,]" Fla Stat. § 440.13(13)(a)—"Plaintiff did not, and cannot, plead that Defendants collected or received a fee in response to their correspondence, because she never made a payment." (Id. at 3.) Thus, they argue that Plaintiff cannot establish a concrete injury with respect to a FCCPA violation predicated on Florida's Workers' Compensation law. (Id.)

6

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). Only concreteness is at issue here.

"An injury is concrete if it actually exists—that is, if it is 'real, and not abstract.'" Hunstein, 48 F.4th at 1242 (quoting Spokeo, 578 U.S. at 340). Concrete harms can be tangible (e.g., physical injury or financial loss) or intangible. Muransky, 979 F.3d at 926. However, not all intangible harms are concrete. See id. "In particular, a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Trichell, 964 F.3d at 997 (quoting Spokeo, 578 U.S. at 341). A plaintiff cannot satisfy the demands of Article III by alleging "a bare procedural violation, divorced from any concrete harm[.]" Spokeo, 578 U.S. at 341. "Rather, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" Trichell, 964 F.3d at 997 (quoting Spokeo, 578 U.S. at 341). "To determine whether an intangible injury is sufficiently concrete, we must look to both history and the judgment of Congress." Id. (citing Spokeo, 578 U.S. at 341).

As for history, "we consider whether the alleged intangible injury bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" Id. (citing Spokeo, 578 U.S. at 341). "Those include . . . reputational harms, disclosure of private information, and intrusion upon seclusion." TransUnion, 141 S. Ct. at 2204 (citations omitted). For example, in Perry, the Eleventh Circuit "held that CNN's dissemination of a plaintiff's news-viewing history to a third-

7

party, in violation of the Video Privacy Protection Act, could constitute a concrete injury because it was analogous to torts that were well-established in American courts—namely, invasion of privacy and intrusion upon seclusion." Muransky, 979 F.3d at 926 (citing Perry, 854 F.3d at 1340-41). And in Pedro v. Equifax, Inc., the Eleventh Circuit "held that an agency's violation of the Fair Credit Reporting Act—offering an allegedly inaccurate statement in a plaintiff's credit report—was analogous to the longstanding tort for publication of defamatory material." Id. (citing Pedro, 868 F.3d at 1279-80).

The judgment of Congress "can matter for two reasons. First, Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Trichell, 964 F.3d at 998 (quoting Lujan, 504 U.S. at 578). "Second, Congress is 'well positioned' to make its own judgment about which harms are sufficiently concrete, particularized, and imminent to constitute injuries in fact." Id. (citing Spokeo, 578 U.S. at 331). However, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." TransUnion, 141 S. Ct. at 2205.

Here, Counts 5 and 6 allege what can be characterized, at best, as an intangible harm resulting from a violation of the FCCPA. (See Compl. ¶¶ 21, 50-63.) Plaintiff wholly fails to argue that her alleged intangible injury has a common-law analogue. See Stalley, 524 F.3d at 1232 (recognizing that the party invoking federal jurisdiction bears the burden of establishing an injury in fact).

Regardless, the Court finds that Plaintiff's alleged intangible injury does not bear "a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" Trichell, 964 F.3d at 997 (quoting Spokeo, 578 U.S. at 341). In Trichell, the plaintiffs sued the defendants for sending deceptive debt collection letters in violation of the FDCPA (which is the FCCPA's federal counterpart).[2] 964 F.3d at 995. Specifically, the complaint alleged that the collection letters misleadingly suggested that the plaintiffs could be sued when, in fact, the statute of limitations had expired on any legal right to collect the debt. 964 F.3d at 995. The district court dismissed the complaint for failure to state a claim. Id. On appeal, neither party raised Article III standing, but the Eleventh Circuit ordered them to address it at oral argument. Id. The Eleventh Circuit ultimately found that a bare violation of the FDCPA of the kind alleged in the complaint did not result in a de facto concrete injury to the plaintiffs. Id. at 997-1005. As to history, the court found that "the common law furnishes no analog to the FDCPA claims asserted" by the plaintiffs. Id. at 998. "The closest historical comparison is to causes of action for fraudulent or negligent misrepresentation, but these torts differ from the plaintiffs' claims in fundamental ways. For centuries, misrepresentation torts

---

[2] The FCCPA instructs: "In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). See also Byrd v. Mfrs. & Traders Tr. Co., Case No: 6:18-cv-1809-Orl-22GJK, 2019 WL 13246785, at *9 (M.D Fla. Sept. 19, 2019) ("[T]he FDCPA and FCCPA are largely similar and 'the FCCPA is construed in accordance with the FDCPA.'") (quoting Lilly v. Bayview Loan Servicing, LLC, Case No: 2:17-cv-345-FtM-99MRM, 2017 WL 4410040, at *2 (M.D. Fla. Oct. 4, 2017)).

have required a showing of justifiable reliance and actual damages[,]" which the plaintiffs had not alleged. Id. (citations omitted).

Similarly, here, the Complaint alleges that Defendants sent collection letters which misrepresented that Plaintiff owed Defendants a debt—specifically, it alleges that Defendants cannot recover the debt from Plaintiff under Florida's Workers' Compensation law. (See Compl. ¶¶ 21, 50-63.) However, it does not allege justifiable reliance or actual damages. "By jettisoning the bedrock elements of reliance and damages, the plaintiff[] assert[s] claims with no relationship to harms traditionally remediable in American or English courts." Trichell, 964 F.3d at 998. "This cuts against Article III standing, for the purpose of that doctrine is to confine courts to their 'traditional role.'" Trichell, 964 F.3d at 998.

The Eleventh Circuit in Trichell further found that "the judgment of Congress disfavor[ed]" the plaintiffs. Id. at 999. It reasoned:

> The FDCPA's statutory findings contain one sentence identifying the harms against which the statute is directed: "Abusive debt collection practices contribute to [a] number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). These serious harms are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead. In terms of "privacy and nuisance concerns," Salcedo, 936 F.3d at 1169, an unwanted mailing is more like an unwanted text message than an unwanted phone call. See Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n, 447 U.S. 530, 542, 100 S. Ct. 2326, 65 L. Ed.2d 319 (1980) (recipient "may escape exposure to objectionable material simply by transferring the [communication] from envelope to wastebasket"). And while a recipient may take offense that a private party has violated the FDCPA, that is akin to taking offense that the government has violated other statutes—an injury that is canonically abstract as opposed to concrete. See, e.g., Defs. of Wildlife, 504 U.S. at 575–76, 112 S. Ct. 2130; Allen v. Wright, 468 U.S. 737, 754, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984).

> The FDCPA's private cause of action reinforces this analysis. It provides that a person may recover "any actual damage sustained by such person as a result of" an FDCPA violation and "such additional damages as the court may allow." 15 U.S.C. § 1692k(a). This formulation suggests that Congress viewed statutory damages not as an independent font of standing for plaintiffs without traditional injuries, but as an "additional" remedy for plaintiffs suffering "actual damage" caused by a statutory violation

Id. at 999-1000. As such, the Eleventh Circuit concluded that "the FDCPA's narrow findings and cause of action affirmatively cut against [the plaintiffs] and, in any event, suggest no congressional judgment firm enough to break with centuries of tradition indicating that misrepresentations are not actionable absent reliance and ensuing damages." Id.

This Court agrees that the harms Congress identified in the FDCPA, including personal bankruptcy, marital instability, job loss, and invasion of privacy, "are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead." Id. at 999. Furthermore, like the FDCPA, the FCCPA's private cause of action provides that a person may recover "actual damages and . . . additional statutory damages as the court may allow . . . ." Fla. Stat. § 559.77(2). "This formulation suggests that [the Florida legislature] viewed statutory damages not as an independent font of standing for plaintiffs without traditional injuries, but as an 'additional' remedy for plaintiffs suffering 'actual damage' caused by a statutory violation." Id. at 1000. Thus, the Florida legislature's judgment disfavors Plaintiff. Id.

The Court rejects Plaintiff's reliance on Church, in which the Eleventh Circuit held that a mere deprivation of the right to disclosures required by the FDCPA, 15 U.S.C. §§

11

1692e(11), 1692g(a)(1)-(5), is a concrete injury in fact even absent a tangible injury. 654 F. App'x at 995. Church is an "unpublished opinion [that] directly conflicts with subsequent binding decisions of the Supreme Court and the Eleventh Circuit." Klein v. Receivable Mgmt. Grp., Inc., 595 F. Supp. 3d 1183, 1194 (M.D. Fla. 2022) (citing TransUnion, 141 S. Ct. at 2214 (concluding the plaintiffs lacked standing because asserted "informational injury that causes no adverse effects cannot satisfy Article III"); Trichell, 964 F.3d at 1004). "The Court is not permitted to follow an unpublished Eleventh Circuit decision when it conflicts with precedent." Id. (citing 11th Cir. Rule 36-2).

The Court further rejects Plaintiff's argument "she was deprived of her statutory right to receive correct information regarding the legitimacy of the debt . . . ." (Resp. at 6 (citing Bacardi, 2017 U.S. Dist. Ct. LEXIS 160951, at *11-12; Belcher, 2018 WL 1701963, at *4).) To begin with, Plaintiff cites no provision of the FCCPA that provides a statutory right to receive correct information regarding the legitimacy of the debt. Even assuming that the FCCPA does confer such a right, the Complaint does not allege that Defendants violated that right—it merely alleges that Defendants attempted to collect a debt they knew they had no right to collect in violation of Fla. Stat. § 559.72(9). (Compl. ¶¶ 60-61.) And even assuming that the FCCPA provides a statutory right to receive correct information regarding the legitimacy of a debt and that the Defendants violated that right, a bare statutory violation is not enough where, as here, neither history nor the judgment of Congress (or the Florida legislature) support a finding that the intangible injury is sufficiently concrete to establish Article III standing. See Trichell, 964 F.3d at 1003 (rejecting the plaintiffs' argument that "the FDCPA gives them a right to receive truthful

communications from debt collectors, which makes any violation of that right qualify as a concrete injury").

In light of the above, the Court finds that Counts 5 and 6 fail to allege a concrete injury in fact. Consequently, Counts 5 and 6 must be dismissed without prejudice for lack of standing. See Stalley, 524 F.3d at 1232 ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.") (citing Crotwell v. Hockman–Lewis Ltd., 734 F.2d 767, 769 (11th Cir. 1984)).

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss Complaint (D.E. 8) is **GRANTED**;

2. Counts 5 and 6 of the Complaint are **DISMISSED WITHOUT PREJUDICE** for lack of standing;

3. All pending motions are **DENIED AS MOOT**; and

4. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of February, 2023.

                                             **JOAN A. LENARD**
                                             **UNITED STATES DISTRICT JUDGE**